■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RONALD McCULLERS, Appellant.— Judgment, Supreme Court, Bronx County, rendered on May 7, 1971, convicting defendant-appellant upon his plea of guilty of robbery in the third degree, for which an indeterminate sentence with a four-year maximum was imposed, affirmed. June 22, 1970, one Bush, a taxicab driver, was robbed at knifepoint by two men. Warley, one of the perpetrators, was arrested immediately. The other man escaped. As a result of information received Patrolman Finnerty went to an apartment occupied by one Boone. After knocking the door was opened by Boone who stated that he was alone in the apartment and closed the door immediately. However, the officer had observed defendant, who fit the description, hiding behind a door. The officer knocked again, inquired who was the person he had observed, took defendant into custody, and to the precinct house. At the station house, when asked if he could identify defendant as one of the perpetrators, Bush replied, according to Finnerty, " That he couldn't be absolutely positive but that it did look like the man, but he can't be sure because he didn't have the jacket on. He was wearing a maroon jacket." Finnerty returned to the Boone apartment where Boone informed him that defendant, shortly prior to Finnerty's first visit, had

arrived at the apartment, without his shoes, claiming to have been the victim of an attempted holdup. This was corroborated by Boone's father who had been in the apartment at the time. Boone delivered to the officer a maroon jacket, a knife and money found in a basket in the kitchen. Boone accompanied the officer to the station house at which time, according to Finnerty, Warley, who earlier had implicated Boone, stated that in fact it was his brother, this defendant, who was the other participant in the crime. However, before Finnerty returned to the station house, this defendant had been allowed to leave. November 3, 1970, Patrolman Finnerty finally located and arrested this defendant, who confessed to the crime. He communicated with Bush telling Bush he had arrested the second perpetrator who was the same person earlier arrested on June 22, 1970. Sometime later Bush signed a long-term complaint, then entered the courtroom where he waited until defendant was brought in by the officer for prearraignment. A combined *Wade* and *Huntley* hearing was held April 14, 1971, at which time Bush testified and fully identified defendant as the second perpetrator. Bush's testimony was to the effect that the two robbers used his cab for about 45 minutes, the codefendant Waverly leaving the cab for brief periods on three occasions, that he had ample opportunity to observe this defendant and conversed with him. The witness testified that he was excited when he viewed defendant on June 22, 1970, and was not 100% sure because the holdup man had been wearing slacks and a maroon jacket. But when the witness saw the defendant on November 23 at the prearraignment he was able to say positively defendant was the man. Defendant's motion to suppress the identification testimony was denied. On this appeal defendant urges (1) his motion to suppress an in-court identification was improperly denied, because the two pretrial identifications were so suggestive as to deny him due process of law; (2) that since the codefendant received a maximum of three years, and defendant a maximum of four years, defendant was penalized for exercising his right to a pretrial hearing. On the second point the defendant received no greater sentence than it was understood he would receive. He cannot now complain because a promise was kept. As to the pretrial identifications, the People, while contending such identifications were not unduly suggestive, agreed, at the conclusion of the hearing, not to offer the pretrial identifications into evidence. The right was reserved to present in-court identification, contending that Bush's observations at the time of the robbery constituted an independent source. The day following the denial of the motion to suppress, as the case was about to proceed to trial, defendant requested leave to withdraw his not guilty plea and to enter a guilty plea. Defendant fully and freely admitted participating in the robbery of Bush. The denial of the motion to suppress was proper. Even if it were not, the prosecution stated its intention not to offer the pretrial identifications, so almost the same result was achieved. Bush could properly identify the defendant at a trial. His failure to be 100% sure on June 22, 1970, would go to the weight to be accorded his in-court testimony of identification, but would not affect its admissibility. Defendant elected not to take the chance. Concur — Stevens, P. J., Markewich, Kupferman and Capozzoli, JJ.; Murphy, J., dissents in the following memorandum: Less than an hour after the robbery the victim, a taxicab driver, was unable to positively identify appellant as one of the two perpetrators at a highly suggestive station house show-up. Since the victim did identify the codefendant, this inability cannot be attributed to nervousness. Some five months later, defendant was arrested. The victim was advised of the arrest of the second perpetrator of the crime and was told, in response to his inquiry, that it 'was the same person he had been unable to

positively identify at the station house. Without even viewing defendant a second time, the victim signed a complaint and then "identified" defendant in Criminal Court at a prearraignment hearing. Following a combined *Wade* and *Huntley* hearing, defendant's motion to suppress the identification testimony was denied. I believe the motion should have been granted. Significantly, the prosecution agreed not to offer the pretrial identifications into evidence, but contended that they were not so unnecessarily suggestive as to taint an in-court identification. While an untainted in-court identification is permissible despite suggestive out-of-court confrontations (*People* v. *Rivera*, 22 N Y 2d 453; *People* v. *Logan*, 25 N Y 2d 185; *People* v. *Rahming*, 26 N Y 2d 411), the prosecution must first prove by "clear and convincing evidence" that such in-court identification was untainted by what had previously occurred. (*People* v. *Ballott*, 20 N Y 2d 600; *People* v. *Logan, supra*.) In my opinion it has failed to meet such burden. It is not sufficient to merely show that the witness had an opportunity to observe the defendant but, rather, that the permitted identification is based on such observation. In the instant case, the victim-witness was apparently willing to sign a complaint against someone he had failed to positively identify five months earlier, within 30 to 45 minutes after the crime, on the arresting officer's assurance that defendant was indeed guilty; and not by reason of any independent recollection of his own. The subsequent identification at the prearraignment proceeding was an expected consequence. The witness was then merely identifying the person he had seen at the station house, who the arresting officer told him over the phone was the actual coperpetrator of the crime and against whom he had already signed a complaint. An identification predicated on such impermissibly suggestive police procedures should not be allowed. Accordingly, the judgment of conviction should be reversed, the motion to suppress the identification granted and the case remanded for further proceedings.